IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| TAD MAYFIELD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:21-cv-4059-MDH ) |
| MISSOURI HOUSE OF REPRESENTATIVES, et al., | ) ) ) ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants Elijah Haahr, Dana Rademan Miller, Judy Kempker, Emily White, and the Missouri House of Representatives' (collectively the "Defendants") Motion to Dismiss Plaintiff's Petition. (Doc. 4). The Defendants are the former Speaker and current employees of the Missouri House of Representatives, in addition to the House of Representatives itself. Plaintiff brings two causes of action against the Defendants—a 42 U.S.C. § 1983 retaliation claims against Defendants Haahr, Miller, Kempker, and White; and a Missouri whistleblower claim for civil damages against the House of Representatives. For the reasons set forth in this Order, Defendants' Motion to Dismiss (Doc. 4) is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Plaintiff Tad Mayfield worked for the Missouri House of Representatives from August 29, 2011 until his termination on August 6, 2020. Plaintiff was employed by the House of Representatives at the time as a Legislative Specialist II. During the calendar year 2020, the globe, including the State of Missouri, dealt with emergent and changing public health needs due to the COVID-19 pandemic. There were numerous requirements and recommendations that face masks

1

be worn to combat the spread of the virus. For example, the federal Centers for Disease Control issued guidance to slow the spread, including recommendations that masks be worn indoors or wen social recommendations could not be followed. Plaintiff asserts that no action was taken by leaders of the Legislative Assembly in mandating the use of masks. In response to this apparent lack of action, Plaintiff sent three separate emails. The first email was sent on July 28, 2020. The second email was sent on July 28, 2020 as well. The third email was sent on August 3, 2020. All these emails reference COVID-19, the use of masks in the Capitol building, and the public safety implicated in adherence to the Centers for Disease Control guidelines. Pertinent excerpts of the emails are as follows:

> Anyway, over the past four months I feel Susan and I have become adept at navigating our new reality with very little risk to our health. It is very irritating to see people out in public with no concern for the safety and wellbeing of others. I am happy that a lot of businesses have adopted mandatory face coverings to gain entry. We went inside the first department store (Kohl's) we've been to in five months yesterday, because face coverings were required. I certainly appreciate and want to acknowledge the efforts you have taken to help reduce the risks to us, your staff, by installing the dutch door and plexiglas, as well as, allowing us to lock the office. I assume, since I haven't heard otherwise, that the House is still not requiring face masks in the Capitol? This is disappointing since the single most important thing people can do to help stop the spread of an airborne virus is to wear a face mask; which greatly reduces the amount of germs they leave in the environment around them. This becomes especially important when people can be carriers/spreaders without knowing they have the virus. At the same time, I have guilt over others being required to work in this hostile environment while I have been secure in my home. At the risk of sounding confrontational, which I in no way wish to convey, I think it is important to state unequivocally, by not requiring face coverings, the House has become a hostile work environment. For sure, countries that have mandatory face covering in public have seen great reductions in the spread of covid-19 and, as a result, fewer hospitalizations and death. If face masks were required for everyone in the Capitol, I would see no reason why we all couldn't go back to work with relative safety."
>
> I understand I am needed at the Capitol as a front-line essential worker supporting the legislative process. Please know I am as eager to get back to the office as anyone and this email is in no way intended to shirk my responsibilities in our office. Susan and I will be making alternative living arrangements in order for me to comply with your request and fulfill my responsibilities. However, I feel ethically and morally

obligated to express my concerns not only for my safety and the safety of my family, but, for the safety of all who enter the Capitol. As my supervisor, I am requesting your guidance as to whom I should contact in order to address my concerns about the safety of our work environment. My belief is that in order to ensure the safest work environment possible during this time, masks should be mandated in the Capitol.

and

I am writing to you because I feel an ethical and moral obligation to do so. We are living in unprecedented times that requires, likewise, unprecedented actions and decisions from the leadership and citizens of our state. Those actions and decisions, or lack thereof, will be recorded in history as either appropriate measures that helped save lives, or inappropriate and resulted in an increase in lives lost.

Businesses, cities and states across this great nation have heeded the CDC's warnings and implemented a number of measures designed to slow/stop the spread of COVID-19, including mandatory face coverings, if we are to continue in our efforts to reopen the economy and get people back to work. I am grateful the Missouri House of Representatives has implemented some of the same measures in an attempt to protect Members, staff, and visitors to our Capitol. Unfortunately, as of yet, the decision to require face coverings in the chambers and public spaces in our Capitol has not been made, leaving all who enter our Capitol at greater risk of contracting COVID-19, and ultimately, negates any benefit received by the measures that have been implemented.

It is important to consider, Members from every district in this state are convening in our chambers and then returning to their respective communities to continue campaigning and holding fundraisers for their reelection bids, or assisting in the election of their successors. It compounds an already serious health crisis for Members to unknowingly contract or transmit COVID-19, due to the lack of a mask mandate in our Capitol, and then return home to unknowingly transmit it to their constituents. All this while hundreds if not thousands of new cases are reported in our state every day.

For the health and well being of all who enter our Capitol, I am requesting that you, as leadership in the House and Senate, adhere to CDC guidelines and implement a mandatory face mask policy for all spaces within our Capitol, excluding the personal office spaces of Members.

On Wednesday, August 5, 2020, Mayfield received an email from Defendant White indicating she and Defendant Miller wanted to have a conference call with him at 9:30 the next morning. The next day, on August 6, 2020, Mayfield, White, Miller, and Bryan Scheiderer

3

participated in a conference call in which he was told by Miller that he could submit a resignation in lieu of termination but that his employment was ending for alleged poor performance. Mayfield denied the request to resign and was terminated for alleged poor performance.

## STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *NEXTEP, LLC v. Kaba Benzing America, Inc.*, 2007 WL 4218977, *1 (E.D. Mo. 2007). When considering a 12(b)(6) motion, the factual allegations of a complaint are assumed true and are considered in the light most favorable to the plaintiff. *Id.* To avoid dismissal for failure to state a claim, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. This statement requires that the plaintiff give the defendant facts sufficient to give fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Id.* The court may dismiss the complaint when it is clear that no relief can be granted under any set of facts that could be proved consistent with the complaint. *See* id.

Plaintiffs claiming employer retaliation in violation of First Amendment rights must show that they "engaged in activity protected by the First Amendment." *Groenewold v. Kelley*, 888 F.3d 365, 371 (8th Cir. 2018). "A public employee's speech is protected under the First Amendment if he spoke as a citizen on a matter of public concern, but a public employee's speech is not protected if he spoke pursuant to his official duties." *Id.*, *citing Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

4

Case 2:21-cv-04059-MDH  Document 19  Filed 06/02/21  Page 4 of 8

## DISCUSSION

### A. Count I: First Amendment Retaliation Claim

Plaintiffs claiming employer retaliation in violation of First Amendment rights must show that they "engaged in activity protected by the First Amendment." *Groenewold v. Kelley*, 888 F.3d 365, 371 (8th Cir. 2018). "A public employee's speech is protected under the First Amendment if he spoke as a citizen on a matter of public concern, but a public employee's speech is not protected if he spoke pursuant to his official duties." *Id.*, *citing Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "Speech involves matters of public concern 'when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.' The inquiry turns on the 'content, form, and context' of the speech." *Lane v. Franks*, 573 U.S. 228, 241 (2014) (citations omitted)."

"Speech is pursuant to an employee's duties if it is 'part-and-parcel of' the employee's concerns about his ability to 'properly execute his duties.'" *Lyons v. Vaught*, 875 F.3d 1168, 1174 (8th Cir. 2017) (quoting *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007)). "The controlling factor is whether the expressions were made pursuant to the employee's duties, not whether the employer ultimately approved of the expressions or related actions." *Bonn v. City of Omaha*, 623 F.3d 587, 593 (8th Cir. 2010).

Defendants rely exclusively on the assertion that the emails Plaintiff sent were specifically related to concerns about his ability to perform his job duties. "Plaintiff's emails, although referencing the [COVID-19] pandemic and other topics, were mainly about his ability to perform his job responsibilities and the use of masks in his workplace." (Doc. 5, p. 5). This argument is unconvincing.

5

In his final email, Plaintiff attempts to persuade the respective leaders of the Missouri Legislative Chambers to mandate the use of masks in public space to prevent the spread of COVID-19. He notes that, "I am writing to you because I feel an ethical and moral obligation to do so." He goes on to write, "[f]or the health and well-being of all who enter our Capitol, I am requesting that you, as leadership in the House and Senate, adhere to CDC guidelines and implement a mandatory face mask policy for all spaces within our Capitol…" He also noted, "[m]embers from every district in this state are convening in our chambers and then returning to their respective communities to continue campaigning and holding fundraisers for their reelection bids, or assisting in the election of their successors."

Nothing contained in the emails indicates that Plaintiff expressed any concern about performing his own job duties nor pursuant to his job duties as a Legislative Specialist. At one point he writes, "[p]lease know I am as eager to get back to the office as anyone and this email is in no way intended to shirk my responsibilities in our office. Susan and I will be making alternative living arrangements in order for me to comply with your request and fulfill my responsibilities." Rather, Plaintiff notes that he is expressing concerns for the safety of employees and visitors of the Capitol, and Missourians at large. Viewing the facts in the light most favorable to Plaintiff, Plaintiff has sufficiently alleged that he spoke as a private citizen on a matter of public concern, rather than pursuant to his job duties. Defendants' Motion to Dismiss Count I of Plaintiff's Complaint is **DENIED**.

**B. Count II: Section 105.055 Whistleblower Claim**

R.S.Mo. § 105.055 provides:

No supervisor or appointing authority of any public employer shall….Prohibit a public employee from or take any disciplinary action whatsoever against a public employee for the disclosure of any alleged prohibited activity under investigation or any related activity, or for the disclosure of information which the employee

> reasonably believes evidences:(a) A violation of any law, rule or regulation; or(b) Mismanagement, a gross waste of funds or abuse of authority, violation of policy, waste of public resources, alteration of technical findings or communication of scientific opinion, breaches of professional ethical canons, or a substantial and specific danger to public health or safety, if the disclosure is not specifically prohibited by law[.]

§ 105.055.3(1)(a)-(b).

The nature of the parties' dispute as to whether Plaintiff's emails could fall under § 105.055 is the meaning of the word "disclosure" within the statute. Defendants contend that "disclosure" requires that Plaintiff communicate something that is not otherwise known. The Missouri Court of Appeals Western District has previously established that the plain and ordinary meaning of "disclosure" in § 105.055 is "the exposure or revelation of something previously unknown." *Hudson v. O'Brien*, 449 S.W.3d 87, 92 (Mo. Ct. App. 2014)

Plaintiff also cites *Hudson* in which the court went on to opine that a "disclosure shall not be excluded from [protection] because…the disclosure was made to a supervisor or to a person who participated in an activity that the employee or applicant reasonably believed to be covered by [the statute or] the disclosure revealed information that had been previously disclosed." *Id*. at 92. That court looked to then-recent amendments of the federal Whistleblower Protection Act which broadened the definition of "disclosure" under that statute. Plaintiff's reliance on *Hudson* is not persuasive. The Court is required to follow Missouri's statutory interpretation rules in interpreting Missouri statutes. *See Balloons Over the Rainbow, Inc. v. Dir. Of Revenue*, 427 S.W.3d 815, 825 (Mo. banc 2014). The Court must interpret "disclosure" by its plain and ordinary meaning rather than adopt language from a separate federal statute.

Accordingly, the Court finds that the plain meaning of "disclosure" under § 105.055 is the exposure or revelation of something previously unknown. *Hudson*, 449 S.W.3d at 92. Plaintiff's Complaint references public health guidance from the Centers for Disease Control & Prevention

in addition to executive orders from Missouri Governor Parson. Plaintiff also alleges that he references some of the information contained in the CDC's public health guidance in his emails to various persons. However, there is no indication or reason to believe that the House of Representatives would not have otherwise been aware of such information, or public information regarding the COVID-19 pandemic in general. The House of Representatives' total disregard of the publicly available scientific and medical advice alone is not evidence that they were unaware of the CDC's or others' guidance—it merely indicates that the institution inexplicably chose not to abide by it, as puzzling as that may appear to thinking people. Therefore, the information provided in Plaintiff's emails does not qualify as a "disclosure" under § 105.055. Therefore, Defendants' Motion to Dismiss Count II of Plaintiff's Complaint is **GRANTED**.

## CONCLUSION

For the reasons set forth in this Order, Defendants' Motion to Dismiss (Doc. 4) is **GRANTED IN PART AND DENIED IN PART**. Count I of Plaintiff's Complaint is not dismissed. Count II of Plaintiff's Complaint is dismissed without prejudice.

**IT IS SO ORDERED.**

Dated: June 2, 2021  /s/ Douglas Harpool
**DOUGLAS HARPOOL**
**United States District Judge**