IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| TAD MAYFIELD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:21-CV-4059-MDH |
| DANA RADEMAN MILLER, et al., | ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS
WITH MEMORANDUM IN SUPPORT**

COMES NOW Plaintiff Tad Mayfield, as prevailing party in the above captioned 42 U.S.C. § 1983 matter, requests an award of reasonable attorneys' fees, expenses, and costs, under Fed. R. Civ. P. 54(d) and 42 U.S.C. § 1988(b). For reasons stated herein, the Court should award Mr. Mayfield his attorneys' fees, expenses, and costs.

## INTRODUCTION

This Court presided over a two-day jury trial that began on November 15, 2022. After considering the evidence, the jury found that Mr. Mayfield had proved his claims against Defendants. The jury awarded Mr. Mayfield his lost wages in the amount of $14,993.93 and awarded him $10,000 in punitive damages against Ms. Miller and $5,000 in punitive damages against Ms. White. Mr. Mayfield's trial team consisted of Kirk Holman and Brandon Corl.

Mr. Mayfield's attorneys spent a significant amount of time conducting discovery; reviewing and analyzing thousands of documents; taking depositions; attending meetings with their client and witnesses; preparing for and attending a mediation; opposing summary judgment; and preparing for and attending a two-day jury trial.

## ARGUMENT

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b), authorizes the Court to award reasonable attorneys' fees to the "prevailing party" in a § 1983 lawsuit. Section 1988 fees are an "integral part" of § 1983 remedies. *Me. v. Thiboutot*, 448 U.S. 1, 11 (1980); *see also Hudson v. Mich.*, 126 S. Ct. 2159, 2167 (2006) ("Since some civil-rights violations would yield damages too small to justify the expense of litigation, Congress has authorized attorney's fees for civil-rights plaintiffs."). The Eighth Circuit has also emphasized the important public policy related to awards of attorneys' fees for § 1983 litigation:

> Congress intended that "[i]n computing the fee, counsel for prevailing parties should be paid, as is traditional for attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913. The primary purpose of this formulation is to promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators. *See id*. A plaintiff bringing a civil rights action "does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest. . .." *Newman v. Piggie Park Enterprises, Inc*., 390 U.S. 400, 402, 88 S. Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

*Casey v. City of Cabool, Mo*., 12 F.3d 799, 805 (8th Cir. 1993).

Mr. Mayfield qualifies for attorney's fees under 42 U.S.C. § 1988. He is a prevailing party under that statute because he "materially alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefit[ed] the plaintiff.'" *Planned Parenthood Great Plains v. Williams*, 863 F.3d 1008, 1011 (8th Cir. 2017) (*quoting Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). He recovered substantial relief, his victory was legally significant, and it advanced a valuable public purpose. The amount Mr. Mayfield requests is

reasonable and in line with the hourly rates normally billed by law firms in the area. Here, he seeks **$191,376.80.**

| Attorney | Hourly Rate | Number of Hours [1] | Total |
|---|---|---|---|
| Kirk D. Holman | $550 | 301.40 | $165,916.80 |
| Brandon L. Corl | $475 | 53.6 | $25,460.00 |
| | | | **$191,376.80** |

### A. Reasonableness of the Number of Hours

In determining an attorney's fee award under § 1988, the "starting point" is the "lodestar," which is calculated by multiplying the number of hours reasonably expended by reasonable hourly rates. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014). The lodestar is "presumed to be the reasonable fee." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (*quoting Blum v. Stenson*, 465 U.S. 886, 897 (1984).

"By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). This is especially so when, as here, counsel represents plaintiff on a contingency and will only recover fees if plaintiff prevails:

> [L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning.

*Id*.

---

[1] The hours of each attorney are attached as Exhibit A and B respectively.

As the attorney most involved with this litigation from start to finish, Kirk Holman reviewed the billing statements for Mr. Corl who incurred time on this case. In his professional judgment, the hours for which compensation is requested were required to win this important First Amendment case on behalf of their client and society at large. Both attorneys kept contemporaneous time records describing the time spent on litigation tasks and have exercised billing judgment in a good-faith effort to exclude excessive, redundant, or otherwise unnecessary hours. For example, the Court will not see any entries reflecting work regarding the dismissed claim of an alleged violation of Mo.Rev.Stat. §105.055, drafting correspondence and emails, reading emails from Defendant, short calls with counsel for Defendant, or even work done by paralegals, all of which are compensable. Although a native of the Bay State, Mr. Holman has learned to abide by the adage he first heard nearly 28 years ago upon his move to Missouri for law school, "Pigs get fat, hogs get slaughtered."

### 1. Reasonableness of the Hourly Rates Sought

"As a general rule, a reasonable hourly rate is the prevailing market rate, that is, the ordinary rate for similar work in the community where the case has been litigated." *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002) (quotation omitted). In deciding upon the appropriate rate, "courts may draw on their own experience and knowledge of prevailing market rates." *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005). But the prevailing market rate is only a starting point. The rate charged should also consider the experience, skill, and expertise of the attorneys as well as the complexity, significance, and undesirability of the case. *See Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993).

As shown in his declaration accompanying this motion, Mr. Holman, is rated as AV Preeminent® by Martindale-Hubbell and has practiced employment law for over 23 years,

4

focusing largely on employment discrimination and civil rights litigation. He has tried to verdict in both federal and state court as first chair 2 verdicts in excess of $10,000,000, 1 additional verdict in excess of $5,000,000, and 4 more verdicts in excess of $1,000,000; and apart from the above verdicts, 13 verdicts in excess of $125,000. He has been selected by Missouri Lawyers Weekly in 2020 and 2021 as one of "The Power 30 – Employment Law," recognizing him as one "the 30 most powerful employment attorneys in Missouri. In 2022, Missouri Lawyers Weekly selected him as one of "The Power 35 – Employment Law," recognizing him as one "the 35 most powerful employment attorneys in Missouri." Mr. Holman has been honored by his peers as a Top 100: 2020 Missouri & Kansas Super Lawyer; Top 50: 2020 Kansas City Super Lawyer; and Top 100: 2019 Missouri & Kansas Super Lawyers.

Brandon Corl, as shown by his declaration, has practiced law for over 14 years and has litigated cases concentrating on representing plaintiffs in personal injury and employment-related matters. He also has extensive experience in litigating products liability/mass torts cases in state and federal courts, including significant pretrial deposition and discovery work in federal multi-district litigation cases. In the years of 2013 to 2021, he was selected as a Rising Star in the Missouri and Kansas Super Lawyer publication by Thomson Reuters. In 2022, he was recognized as a Super Lawyer by this publication.

Julianne Germinder, a Missouri attorney who practices law in the mid-Missouri area, attests that the hourly rates requested here "are consistent with the market rate for attorneys charged by other employment and civil rights attorneys in the state including here in the mid-Missouri area." She also attests that the amount of hours are reasonable.[2]

---

[2] Her declaration is attached as Exhibit C.

Courts also affirm fee awards even if the fee request exceeds the verdict. *See City of Riverside, et al., v. Rivera*, 477 U.S. 561, 106 S. Ct. 2686 (1986). In that case, the Court affirmed a fee award of $245,456.25 on damages of $33,500, relying on the fact that successful Section 1983 litigants "vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Id*. at 574.

   a. **The requested fee is more than reasonable given other factors.**

While the starting point for determining a reasonable fee is the lodestar, courts have discretion to increase the award for other considerations, "such as the nature of the results obtained." *Miller v. Dugan*, 764 F.3d 826, 830–31 (8th Cir. 2014). Courts may also consider the award based on one or more of the factors below: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley v. Eckerhart*, 461 U.S. 424, 429–30 n.3 (1983).

   1. **The case presented constitutional questions requiring highly skilled and experienced attorneys.**

Counsel's efforts vindicated the constitutional rights of Mr. Mayfield and greatly served the public interest. In filing this lawsuit, Mr. Mayfield always had one aim: to establish that his termination violated the Constitution. He achieved that goal when the jury concluded that his rights were violated. The decisive and quick conclusion of the jury vindicated not only Mayfield's constitutional rights, but also the rights of all public employees to speak on matters relating to

6

health and safety without fear of reprisal. As noted by the Supreme Court, the vindication of "important civil and constitutional rights" simply "cannot be valued solely in monetary terms." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). The "public as a whole has an interest in the vindication of rights conferred" by the Constitution "over and above the value of a civil rights remedy to a particular plaintiff." *Id*. (internal quotation and citation omitted).

In other words, this case serves as a quintessential example of why § 1988 exists: to encourage civil rights litigation that benefits the public. *See Blanchard v. Bergeron*, 489 U.S. 87, 87–88 (1989) (stating that § 1988 "was intended to encourage meritorious claims … because of the benefits of civil rights litigation for the named plaintiff and for society at large"). Compensating counsel for this important constitutional victory fulfills congressional intent and ensures that such meritorious civil rights litigation continues. The requested attorney's fees are justified considering results achieved for Mayfield and the general public

2. **The case required a substantial amount of time and labor, had no guarantee of pay, involved polarizing issues, and a stubborn entity with the purse strings.**

Many lawyers would not have taken this case. As Mr. Mayfield himself testified, no lawyers were interested until he contacted Mr. Holman. It required uncompensated work over more than two years and had no guarantee of pay. In addition, the State of Missouri is known as parsimonious to say the least when it comes to resolution of its civil litigation matters. Plus, the issues involved were very polarizing because of political beliefs and misinformation that has run rampant in our country regarding COVID-19, mask mandates, and perceived government overreach. Accepting a case in that context further validates a full fee award. Mr. Mayfield also is entitled to recover fees associated with preparing this motion. Because the time spent preparing fee applications like this one generally is compensable. *See El-Tabech v. Clarke*, 616 F.3d 834, 843 (8th Cir. 2010).

7

**B. Mayfield requests costs and nontaxable expenses**

A prevailing party is entitled to an award of all his reasonable expenses. *West Virginia Hospitals, Inc. v. Casey*, 499 U.S. 83, 87 (1991); *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294–295 (8th Cir. 1996) (long distance and fax charges, messengers, express mail). Here, Plaintiff's counsel had expenses in the form of deposition editing, videotaped depositions, lodging, and computer-based research expenses.[3] These expenses were reasonable, amount to **$4,474.61** and should be awarded. These are the reasonable types of expenses that a lawyer would ordinarily bill a client.

WHEREFORE, Plaintiff moves the Court to grant the relief and rulings requested above and provide such other and further relief the Court believes is just and proper.

                                      **HOLMAN SCHIAVONE, LLC**

By: /s/ Kirk D. Holman
Kirk D. Holman, Mo Bar #50715
Brandon Corl, Mo Bar #58725
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Phone: (816) 283-8738
Facsimile: (816) 283-8739
Email: kholman@hslawllc.com
Email: bcorl@hslawllc.com

**ATTORNEYS FOR PLAINTIFF**

---

[3] Documentation regarding these matters is attached as Exhibit D.

## CERTIFICATE OF SERVICE

The undersigned certifies that on the above and foregoing is being electronically transmitted to the Court for filing within the CM/ECF system, which will send a notice of electronic filing to:

Eliot Gusdorf

ATTORNEYS FOR DEFENDANTS

/s/ Kirk D. Holman
ATTORNEY FOR PLAINTIFF
